UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| NADIA JUDITH BIJAOUI,<br><br>Plaintiff,<br>vs.<br><br>CA DEPARTMENT OF SOCIAL SERVICES;<br>YORK RISK SERVICES GROUP; and<br>WELLCOMP MANAGED CARE,<br><br>Defendants. | 4:18-CV-4110-LLP<br><br>**OPINION AND ORDER SCREENING<br>CASE AND DISMISSING COMPLAINT** |

Plaintiff, Nadia Bijaoui ("Plaintiff") is proceeding *in forma pauperis* and has filed an Amended Complaint in this matter. Doc. 11. Also pending before the Court is Plaintiff's second motion to appoint counsel. Doc. 9. As described more fully below, in screening the Amended Complaint as the Court is obligated to do pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court dismisses Plaintiff's Amended Complaint for failure to state a claim upon which relief may be granted.

## BACKGROUND

It appears from the allegations in Plaintiff's Amended Complaint that she was employed to provide in-home support services (IHSS) to her disabled sister. Doc. 11 at 2. *See Guerrero v. Superior Court*, 213 Cal.App.4th 912, 917 (2013). "IHSS is a state social welfare program designed to avoid institutionalization of incapacitated persons. It provides supportive services to aged, blind, or disabled persons who cannot perform the services themselves and who cannot safely remain in their homes unless services are provided to them. The program compensates persons [such as Plaintiff], who provide the services to a qualifying incapacitated person." *Id.* at 920 (quoting *Basden v. Wagner* 181 Cal.App.4th 929, 931 (2010)). The California Department of Social Services ("DSS") is the state agency that supervises counties which administer the program, as agents of the state, on the local level. *See In-Home Supportive Services v. Workers' Comp. Appeals Bd.*, 152 Cal.App.3d 720, 720, 724 (1984). IHSS providers have a dual

1

employment relationship with the state, as well as the recipient of IHSS services, and are eligible for benefits for injuries sustained in the course and scope of employment. *Guerrero*, 213 Cal.App.4th at 951 (citing *In-Home Supportive Services*, 152 Cal.App.3d at 731).

On April 11, 2010, Plaintiff sustained injuries during the course of her employment with the DSS when she attempted to catch a patient (presumably her sister) from a fall. Doc. 11-1 at 2; Doc. 7 at 1. A physician diagnosed her with lumbar spine strain and cervical strain on April 12, 2010, and during her follow-up appointment on April 22, 2010, also noted right knee pain. Doc. 11-1 at 8. An x-ray of Plaintiff's right knee was taken and a physician noted the following: (1) a slight depression central aspect lateral tibial plateau; (2) mild degenerative thinning medial compartment of the knee joint; 3) marginal spurring from the superior aspect of the patella; 4) likely small knee joint effusion. Doc. 11-1 at 8. Plaintiff was given a knee support and prescribed physical therapy two times a week for two weeks. Doc. 11-1 at 8. It is alleged that Plaintiff's physician denied her further physical therapy even though her physical therapist recommended additional therapy. Doc. 11-1 at 7. Plaintiff's follow-up appointments in May 2017 noted the lumbar spine strain and cervical spine strain diagnoses, but omitted any mention of knee pain or injury. Doc. 11-1.

On October 15, 2010, Plaintiff saw a physician at a different clinic who diagnosed her with: 1) cervical spine discopathy; 2) right hip internal derangement; 3) lumbar spine discopathy; 4) right knee internal derangement; 5) right should rotator cuff syndrome; 6) insomnia, stress, anxiety, and depression. Doc. 11-1 at 6. The physician recommended physical therapy two to three times per week for six weeks. Doc. 11-1 at 6. Plaintiff alleges that she was denied access to a local physical therapist and that the physical therapist she saw was an hour's drive from her home. Doc. 11 at 9. The long drive exacerbated her conditions and Plaintiff discontinued physical therapy. Doc. 11 at 9.

On October 10, 2012, Plaintiff was seen for an orthopedic evaluation and was diagnosed with: 1) cervical radiculopathy; 2) bilateral shoulder impingement; 3) lumbosacral radiculopathy; and 4) right knee medial and lateral meniscal tear. Doc. 11-1 at 6, 27. Plaintiff's physician sent an authorization request for right knee arthroscopy and partial meniscectomy

around October 10, 2012, and January 17, 2013. Doc. 11-1 at 27. Two authorization requests sent by Plaintiff's physician to defendant York Risk Service Group ("York") went unanswered. Doc. 11-1 at 14, 27.

On June 14, 2013, Plaintiff's untreated knee gave away while she was descending the stairs and she broke her ankle. Doc. 11 at 11. On June 22, 2013, Plaintiff was admitted to the hospital with a pulmonary embolism. Doc. 11 at 11.

On October 10, 2013, Plaintiff saw her treating physician who recommended that her right ankle fracture be included in her claim form as a compensable consequence of the right knee injury. Doc. 11-1 at 33. Plaintiff's physician noted that Plaintiff was still a candidate for right knee arthroscopy and partial meniscectomy and submitted a subsequent authorization for surgery to York on October 18, 2013, and sent a reminder surgery authorization request to York on November 4, 2013. Doc. 11-1 at 14, 16. Plaintiff's physician recommended that she have a follow-up appointment once the right ankle fracture was included in the patient's claim form as a compensable consequence of the right knee injury. Doc. 11-1 at 33. On November 5, 2013, Plaintiff's physician received a letter from York in Roseville, California, stating that it objected to the request for surgical authorization made on October 18, 2013, and for any ongoing treatment on the basis that it has not accepted that the right knee was causally connected to Plaintiff's April 2010 workplace injury. Doc. 11-1 at 18.

On April 5, 2017, an administrative law judge approved a Division of Workers' Compensation Workers' Compensation Appeals Board Stipulation with Request for Award ("the Stipulation")[1] that Plaintiff entered into with DSS for Case No. ADJ7785982 relating to injuries she sustained to her "right knee, right foot, cervical spine, lumbar spine, and psyche" during the course of her employment. Doc. 7. The claims administrator was York in Roseville, California. Doc. 7 at 2. The Stipulation provides for temporary disability benefits from May 3, 2010, until August 3, 2010. Doc. 7 at 2. The Stipulation also provides for weekly permanent disability benefits in the amount of $80,787.50 less credit for payments previously made. Doc. 17 at 2.

---

[1] The Stipulation stated that it was based on the reports of PQME Dr. Samimi, P&S report of Dr. Gofnung and the P&S report of Dr. Ashikyan. Doc. 7 at 2.

The Stipulation provides that Plaintiff is to receive future medical treatment[2] from her treating physician in South Dakota and specifies that Plaintiff understands that her physician will be providing her medical care/treatment pursuant to the workers' compensation laws of the State of California. Doc. 7. Plaintiff stipulated to the dismissal of cases ADJ8242032 and ADJ8242037 with prejudice. Doc. 7.

On May 2, 2017, Plaintiff received authorization from York/WellComp[3] for an MRI in South Dakota. Doc. 11 at 14. Plaintiff alleges that balance studies and physical therapy were also authorized and that the balance studies confirmed that her lack of balance was due to orthopedic circumstances and did not derive from neurological causes. Plaintiff discontinued balance studies because of the "intense discomfort' they caused the pinched nerve in her neck and lower back. Doc. 11 at 14. The clinic in South Dakota sent numerous requests for acupuncture, epidural injections, and a spinal cord stimulator implant. Doc. 11 at 14; 11-1 at 36. Plaintiff alleges that all such requests were denied for lack of information and cites to three examples of denials she received. Doc.11 at 14.

On December 8, 2017, a physician reviewer conducting a Utilization Review for WellComp was asked to review Plaintiff's treating physician's (in South Dakota) request for authorization for a surgery decompression L3-4 and L4-5 with fusion and pedicle screw fixation at L4-5, possibly L3-5. Doc. 11-1 at 47. The physician reviewer recommended that the procedure not be certified, stating that they needed a current medical report that will support medical necessity. Doc. 11-1 at 47. Plaintiff provided the medical report and in a subsequent Utilization Review was informed by the physician reviewer that "[n]o current medical information by [the physician] or the proposed operating surgeon and no formal imaging study reports were present in the record to document the presence of a lesion that would benefit from surgical intervention" and that the "request [did] not meet Guideline requirements." Doc. 11-1 at 44. On June 28, 2017, Plaintiff stated in a letter that she would sign all HIPAA required forms, but the letter was ignored. Doc. 11 at 14. On July 3, 2017, a physician reviewer for WellComp performed a Utilization Review for the spinal cord stimulator trial (boston system)

---

[2] A stipulated award may provide that the employer has liability for further medical treatment. *Price v. Workers' Comp. Appeals Bd.*, 10 Cal.App.4th 959, 866 (1992).
[3] WellComp is a subsidiary of York.

4

and implant neuroelectrodes prescribed by Plaintiff's physician in South Dakota. The physician reviewer recommended that WellComp not certify the procedures and reasoned as follows:

> The submitted clinical notes document persistent neck and low back pain that has been refractory to extensive conservative management and interventional pain management procedures. A psychological evaluation performed on 06/07/17 indicates the presence of excessive somatic complaints for which mental health care has been recommended. Given the claimant did not attain psychological clearance, criteria for spinal cord stimulator trial have not been met.
> EMB Citations: 1. The ACOEM guidelines do not apply to this request.
> 2. The CA Chronic Pain MTUS is silent in regard to the use of neuromodulation therapy for conditions other than CRPS.
> 3. ODG: Low Back. Spinal Cord Stimulator Recommended only for selected patients in cases when less invasive procedures have failed or are contraindicated and with psychological clearance.

Doc. 11 at 14. Plaintiff alleges that the clinic's emails and approximately fifty phone calls to WellComp were ignored. Doc. 11 at 14. Plaintiff states that York and WellComp continued to deny helpful treatments and only authorized treatments such as the MRI, balance studies and physical therapy which caused pressure on her pinched nerves. Doc. 11 at 14-15.

Plaintiff sent counsel for York a letter on March 13, 2018, stating that the only treatment that she has been approved for in South Dakota was physical therapy which irritated her pinched nerve and that WellComp continually argues that insufficient information was provided to cover the claim. Doc. 11-1 at 50-51. Plaintiff put forth in the letter her second official request for future medical care and stated that her first request, dated August 10, 2017, was ignored. Doc 11-1 at 51. Around March 15, 2018, Plaintiff was informed by York that it was requesting a Workers' Compensation Medicare Set-Aside analysis to determine future costs and stated that it will let her know if the proposed settlement is acceptable to both its client, DSS, and to her. Doc. 11 at 15. Plaintiff was also advised that with regard to certification of medical treatment, "Utilization Review requires that certain parameters be met and that [her physician in South Dakota] may be able to streamline certification of his request by asking for peer-to-peer discussion with [Utilization Review]." Doc. 11 at 15.

On August 31, 2018, Plaintiff filed her *pro se* complaint in the United States District Court against DSS, York, and WellComp alleging claims of negligence, deceit, fraud, and

conspiracy, and filed an application to proceed *in forma pauperis* and a motion for appointment of counsel. The Court granted Plaintiff's motion to proceed *in forma pauperis*, denied Plaintiff's motion to appoint counsel, and ordered that Plaintiff file a copy of the April 2017 Stipulation with the Court before it undertook its preservice review pursuant to 28 U.S.C. § 1915(e)(2)(B). Plaintiff filed a copy of the Stipulation with the Court on October 11, 2018. Doc. 7.

On October 10, 2018, Plaintiff was issued a Workers' Compensation Medicare Set-Aside Arrangement in the amount of $198,733.33. Doc. 11-1 at 66. Because under Federal regulations, 42 C.F.R. §§ 411.46 and 411.47, payment for work-related medical expenses should not be shifted to Medicare from the responsible party, a portion of a claimant's workers' compensation settlement may be set-aside to pay for future work-related services that would otherwise be reimbursable by Medicare. Doc. 11-1 at 66. Medicare will not pay for any medical expenses for the work-related injury or illness after a Workers' Compensation settlement is received, until the amount allocated or set-aside for future medical expenses that would otherwise be reimbursable by Medicare is exhausted. Doc. 11-1 at 66.

On May 2, 2018, Plaintiff received an email from counsel for DSS stating that it was unlikely that DSS would be willing to resolve claims via Compromise and Release in the amount of $198,733.33 as indicated in the set-aside arrangement, but that she would discuss further with DSS. Doc. 11 at 16. Counsel also indicated that even though Plaintiff was no longer enrolled with Medicare, DSS was still required to obtain its approval regarding the settlement due to the probability that Medicare would eventually become liable, as Medicare would shift responsibility back to DSS if it did not coordinate settlement with them first. Doc. 11 at 16.

On May 25, 2018, Plaintiff filed a Declaration of Readiness to Proceed to Expedited Hearing at WCI Court Marina del Rey to request immediate access to treatments. Doc. 11 at 16. The hearing was scheduled for July 9, 2018. On the day of the hearing, Plaintiff received a telephone call from an attorney representing York requesting that Plaintiff cancel the hearing because York had agreed to a Compromise and Release of $199,000.00 and explained that this request is under review by the Centers for Medicare & Medicaid Services ("CMS"). Plaintiff emailed an I&A officer with the MCI Marina del Rey Court asking what her options were if

CMS did not approve the settlement amount. Doc. 11 at 17. Plaintiff alleges that after the hearing was taken off the schedule, counsel for York notified her that the Medicare Set-Aside Arrangement would not be final until after DSS's review and that DSS's review could take up to six months. Doc. 11 at 17. On July 12, 2018, CMS issued a letter to WellComp approving the Medicare Set-Aside Arrangement that had been submitted. Doc. 11-1 at 63. On December 12, 2018, Plaintiff was informed that DSS did not provide York with authority to resolve her claim via Compromise and Release and that the Stipulation would remain in effect. Doc. 11 at 17.

On March 27, 2019, Plaintiff received a Notice Regarding Permanent Disability Benefits Payment Termination informing her that payments were ending because the Stipulated Award in the amount of $79,790, payable $230 per week from August 28, 2013, through March 26, 2019, was paid in full. Doc. 11-1 at 79.

On April 1, 2019, the Court undertook its preservice screening of Plaintiff's complaint. The Court held that Plaintiff had failed to state a claim for fraud and deceit. Doc. 8. In evaluating Plaintiff's claim that Defendants were negligent in denying and delaying authorization for medical treatments, the Court stated that while South Dakota recognizes a common law cause of action for bad faith failure of an insurance carrier to provide workers' compensation benefits, in order to state such a claim, Plaintiff must allege that Defendants engaged in intentional misconduct in denying benefits. The Court held that Plaintiff failed to state a claim for bad faith denial of workers' compensation benefits because Plaintiff alleged that Defendants' denial and delay were negligent. Doc. 8. The Court granted Plaintiff leave to amend because it concluded that Plaintiff's allegations suggested that she may have a cognizable claim.

On May 2, 2019, Plaintiff filed her Amended Complaint with the Court. Doc. 11. The Court will now undertake its preservice review of the Amended Complaint.

## STANDARD OF REVIEW

Congress has directed this Court under 28 U.S.C. § 1915(e)(2)(B) to review and screen claims in a complaint being filed *in forma pauperis* to determine if they are: (1) frivolous or

malicious; (2) fail to state a claim on which relief may be granted; or (3) seek monetary relief against a defendant who has immunity. *See* 28 U.S.C. § 1915(e)(2)(B).

A complaint states a claim upon which relief may be granted if it contains sufficient factual matter, accepted at true to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). A plaintiff must demonstrate a plausible claim for relief, that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (citing Fed. R. Civ. P. 8(a)(2)). "Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id. (citation omitted).*

A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). A reviewing court has the duty to examine a *pro se* complaint "to determine if the allegations provide for relief on any possible theory." *Williams v. Willits,* 853 F.2d 586, 588 (8th Cir. 1988)*.* However*,* a court is not required to supply additional facts for a *pro se* plaintiff, nor construct a legal theory that assumes facts which have not been pleaded. *See Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004). The Court must also weigh all factual allegations in favor of the plaintiff, unless the facts alleged are clearly baseless. *Denton v. Hernandez,* 504 U.S. 25, 32 (1992).

## DISCUSSION

In her Amended Complaint, Plaintiff realleges claims of fraud and deceit, negligence, and civil conspiracy. Doc. 11. The Court will address each one in turn.

## I. Fraud & Deceit Claims

In reviewing Plaintiff's Amended Complaint, but for Count 5, the Court was unable to find any facts to even remotely support a claim for fraud or deceit. In Count 5, Plaintiff, alleges that York's failure to inform her that DSS was required to approve of the Medicare Set-Aside Agreement before it became final, and that such process might take six months, led her to cancel her scheduled court hearing before an administrative law judge in California to request immediate access to treatments.

In reviewing the allegations in Plaintiff's Amended Complaint, the Court concludes that Plaintiff has failed to state a claim for fraud or deceit under either South Dakota or California law. South Dakota Codified Law ("SDCL") § 20-10-1 provides that "[o]ne who willfully deceives another, with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers." SDCL § 20-10-2(3) describes one of the acts constituting deceit within the meaning of SDCL § 20-10-1 as "[t]he suppression of a fact by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want to communication of that fact[.]" Under California law, concealment or suppression of a material fact may also give rise to a cause of action for fraud in deceit under certain circumstances. *See* William Lindsley, 34A Cal.Jur.3d, Fraud and Deceit § 3 (updated Feb. 2020). Even if York's omission was sufficient to give rise to a cause of action for deceit, an issue that the Court need not determine at this juncture, the Court concludes that Plaintiff has failed to state a claim for fraud and deceit under either South Dakota or California law because she has failed to allege actual damages as a result of the alleged fraud or deceit. *See In re Estate of Olson*, 757 N.W.2d 219, 225 (S.D. 2008) ("It is established in South Dakota that '[c]ivil actions founded on negligence or fraud require damages as an essential element.'"); *All. Mortg. Co. v. Rothwell*, 10 Cal.4th 1226, 1229 (1995) ("Unless a plaintiff merely seeks to rescind a contract, it must suffer actual monetary loss to recover on a fraud claim."); SDCL § 21-1-1 and Cal. Civ. Code § 3281 (defining damages as monetary compensation for loss or harm suffered by a person as the result of the unlawful act or omission of another). All that can be inferred from Plaintiff's Amended Complaint is that she would not have cancelled her court hearing had counsel informed her that DDS was required to approve of the Medicare Set-Aside Agreement

and that this process may take up to six months. These factual allegations are insufficient to state a claim for fraud or deceit under either South Dakota or California law.

## II. Negligence Claim

The Court stated in its April 1, 2019, Order that Plaintiff may have a cognizable claim for bad faith denial of workers' compensation benefits under South Dakota law, but concluded that Plaintiff's allegations of negligence did not state such a claim. "An action for bad faith compensates an insured for the intentional misconduct of a defendant insurer as distinguished from merely negligent conduct." *Jordan v. Union Ins. Co.*, 771 F.Supp. 1031, 1033 (D.S.D 1991) (citation omitted). The conduct of an insurer in denying a claim is deemed intentional and in bad faith where there is (1) an absence of a reasonable basis for denying the benefits, and (2) the insurer's knowledge . . . of the lack of a reasonable basis for denial. *Mordhorst v. Dakota Truck Underwriters & Risk Admin. Servs.*, 886 N.W.2d 322, 324 n.1 (S.D. 2016). "An insurer is liable to a claimant *only* when "it has intentionally denied (or failed to process or pay) a claim without a reasonable basis.'" *Hein v. Acuity*, 731 N.W.2d 231, 236 (S.D. 2007) (quoting *Champion v. U.S. Fidelity & Guar. Co.*, 399 N.W.2d 320, 324 (S.D. 1987)). "Being dilatory or even slow to the point of 'footdragging' doesn't in and of itself amount to bad faith until it reaches the point where it may be said such conduct amounts to an intentional, albeit a reckless, disregard of the absence of a reasonable basis to deny benefits. Mere negligence does not amount to an intentional tort." *Ulrich v. St. Paul Fire & Marine Ins. Co.*, 718 F.Supp. 759, 763-64 (S.D. 1989). However, "knowledge of the lack of a reasonable basis may be inferred and imputed to an insurance company where there is a . . . reckless indifference to facts or to proofs submitted by the insured." *Champion*, 399 N.W.2d at 324.

At the time of Plaintiff's workplace injury in California, Plaintiff was a California resident employed by the DSS in California. Plaintiff applied for and was awarded workers' compensation benefits in California. California workers' compensation law requires claims administrators to authorize and pay for medical treatment "that is reasonably required to cure or relieve the injured worker from the effects of the workers' injury" based upon specified medical treatment guidelines. Cal. Labor Code §§ 4600, 4610(b); *State Comp. Ins. Fund v. Workers' Comp. Appeals Bd.*, 44 Cal.4th 230, 236 (2008). Medical treatment guidelines used in California

are in the medical treatment utilization schedule (MTUS) published by the Division of Workers' Compensation. *Stevens v. Workers' Comp. Appeals Bd.*, 241 Cal.App.4th 1074, 1089 (2015); Cal. Labor Code §§ 4610(b), 5307.27. The MTUS incorporate "evidence-based, peer-reviewed, nationally recognized standards of care" and address the "appropriateness of all treatment procedures . . . commonly performed in workers' compensation cases." Cal. Labor Code § 5307.27(b). Treatment guidelines in the MTUS are presumptively correct on the issue of extent and scope of medical treatment. Cal. Labor Code § 4604.5(a). The presumption is rebuttable and may be controverted by a preponderance of the scientific medical evidence establishing that a variance from the guidelines reasonably is required to cure or relieve the injured worker from the effects of his or her injury. *Id.*

In the utilization review process, the claims administrator may approve treatment, but is not permitted to change or deny treatment. *Stevens*, 241 Cal.App.4th at 1088-89 (citing Cal. Code Regs., tit. 8, § 9792.9.1(e)(1)). Only a physician who is qualified to evaluate the recommended treatment may do this. *Id.* at 1089. If a physician reviewer changes or denies treatment, the claims administrator will communicate the decision to the claimant and the claimant's treating physician.

To challenge a decision to deny treatment recommended by a treating physician, a claimant can request an independent medical review (IMR) using the IMR request form that the claims administrator must include with any decision to deny treatment. Cal. Labor Code §§ 4602(b) ("If the employee objects to a decision made pursuant to Section 4610 to modify, delay, or deny a request for authorization of a medical treatment recommendation made by a treating physician, the objection shall be resolved only in accordance with the independent medical review process established in Section 4610.5"); 4610.5(d) ("If a utilization review decision denies or modifies a treatment recommendation based on medical necessity, the employee may request an independent medical review as provided by this section."). This must be done within 30 days after the claimant received the decision from the claims administrator. Cal. Labor Code § 4610.5(h)(1). If the claims administrator unreasonably delays or denies treatment, a claimant may be awarded a penalty payment of up to 25 percent of the value of the payment unreasonably delayed or denied, up to $10,000. Cal. Labor Code § 5814.

In April 2017, Plaintiff and entered into the Stipulation with DSS which provided Plaintiff $80,787.50 in permanent disability, payable weekly, and provided for future medical care/treatment with Plaintiff's physician in South Dakota pursuant to the workers' compensation laws of the State of California. Doc. 7; *see* Cal. Civ. Prac. Workers' Compensation § 7:5 ("Stipulations with request for award can provide for future medical care to the employee as a result of the injury at the expense of the employer or carrier."). A stipulation becomes an executed contract when payments are made pursuant to the stipulation. *Price v. Workers' Comp. Appeals Bd.*, 10 Cal.App.4th 959, 966 (1992). Section 5803 accords the workers' compensation board continuing jurisdiction to rescind or revise its awards, "upon good cause shown." *Brannen v. Workers' Comp. Appeals Bd.*, 46 Cal.App.4th 377, 382 (1996). Plaintiff's claims for future medical care/treatment in South Dakota are still subject to the Utilization Review process in California in order to determine if the care follows scientifically based medical treatment guidelines. *See State Comp. Ins. Fund v. Workers' Comp. Appeals Bd.*, 44 Cal.4th 230, 236 (Cal. 2008) (concluding that the statutory language of § 4610 "indicates the Legislative intended for employers to use the utilization review process when reviewing and resolving *any and all* requests for medical treatment."). If a claims administrator unreasonably delays or denies treatment, a claimant may seek penalties and/or may request an independent medical review. Cal. Labor Code § 5814.

In her Amended Complaint, Plaintiff takes issue with York's denial of Dr. Haronian's 2013 request for authorization to treat Plaintiff's right knee in California and York's denial of various medical procedures that were prescribed by Plaintiff's physician in South Dakota in 2017. Plaintiff alleges that some of the denials were for insufficient information and that she and her Sioux Falls physician tried to email and call York, but that their communications were ignored.

### A. Failure to Exhaust Administrative Remedies

While South Dakota recognizes in tort a claim for bad faith denial of worker's compensation insurance benefits, before a court may hear such a claim, the claimant must obtain a final judgment in his or her favor within the workers' compensation forum. *See Harms v. Cigna Ins. Co's*, 421 F.Supp.2d 1225, 1229 (D.S.D. 2006) (J. Schreier) (citing *Zuke v.*

*Presentation Sisters, Inc.*, 589 N.W.2d 925, 930 (S.D. 1999)). "[A]n insurer's denial of [a] plaintiff's claim for benefits c[annot] have been made in the absence of a reasonable basis once the department of labor [has] found that the plaintiff was not entitled to workers' compensation benefits." *Zuke*, 589 N.W.2d at 930. Thus, before a trial court may grant relief for a bad faith denial of worker's compensation benefits, it must decide whether the plaintiff is entitled to benefits. *Id.* This threshold issue must be decided within the worker's compensation forum in order to "further[ ] the goal behind the worker's compensation laws in having a claimant's entitled to benefits properly determined by the agency which has the most experience and expertise in dealing with these types of issues." *Id.* In South Dakota, exhaustion of a workers' compensation claim requires that a claimant not only receive a final determination from an administrative law judge regarding the benefits entitled to receive, but also that the claimant seek review of the decision through the appeals process. *See Lagler v. Zurich Am. Ins. Co.*, Civ. No. 12-4037, 2012 WL 3264906, at *3 (D.S.D. Aug. 10, 2012) (J. Piersol) (citing SDCL § 62-7-19 (providing for appeals to the circuit court of administrative law decisions)).

The Court has found no South Dakota case which has recognized a claim for bad faith denial of workers' compensation benefits under another state's workers' compensation laws. *Cf. Zuke*, 589 N.W.2d at 929 ("[O]nly after a worker's compensation claimant has exhausted her remedies under the South Dakota Workers Compensation statutes may a trial court hear her bad faith claim for denial or worker's compensation benefits."). Even so, in reviewing the allegations in the Amended Complaint and exhibits attached thereto, nowhere does Plaintiff allege that she sought review of the physician reviewer's denial of authorization for medical treatment within the California Workers' Compensation forum. As stated above, a claimant may do so by requesting an independent medical review of the denial. Thus, even if South Dakota did recognize a bad faith claim for a denial of workers' compensation benefits under another jurisdiction's worker's compensation laws, it appears that Plaintiff has failed to exhaust her administrative remedies as to such a claim.

**B. Bad Faith Claim Barred Under California Law**

The Court has also come to understand that unlike in South Dakota, California law does not recognize a bad faith claim under these facts. The California Labor Code establishes

California's workers' compensation system as the exclusive remedy available to an employee for a cause of action that arises from a compensable workplace injury." *See King v. CompPartners, Inc.*, 5 Cal.5th 1029, 1052 (2018) ("[I]njuries arising out of and in the course of the workers' compensation claims process . . . fall within the scope of the exclusive remedy provisions. . . ."). Accordingly, California has "barred all claims based on disputes over the delay or discontinuance of workers' compensation benefits, including those claims seeking to recover economic or contractual damages cause by the mishandling of a workers' compensation claim." *Charles J. Vacanti, M.D., Inc. v. State Comp.. Ins. Fund*, 24 Cal.4th 800, 815 (internal citations omitted) (2001); John K. DiMugno & Paul E.B. Glad, California Insurance Law Handbook § 11:274, *Workers' compensation carriers: Duty to employee* (updated Mar. 2019) (stating that a workers' compensation carrier, as well as independent claims administers and adjusters, are immune from liability to an insured worker for bad faith in refusing to pay benefits or in delaying their payment; workers' compensation is the worker's exclusive remedy). "Delay or refusal to pay benefits, even if done intentionally and with full knowledge of the hardship to the injured claimant, is insufficient to avoid exclusive jurisdiction . . . even where the delay or refusal was in bad faith." Judge Alan Eskenazi, Cal. Civ. Prac. Workers' Compensation § 15:29, *Exclusive jurisdiction of WCAB* (updated Mar. 2020). Under the California's workers' compensation laws, an employee's remedies against a workers' compensation carrier are, in most cases, limited to the 25 percent penalty for unreasonable delay or refusal to pay benefits in Labor Code § 5814. *Id.*; Cal. Labor Code § 5814.

A federal court sitting in diversity must apply the choice-of-law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941). Accordingly, South Dakota's choice-of-law rules therefore govern. The Court has already identified that a true conflict exists between South Dakota and California law in that a claim for bad faith denial of workers' compensation benefits is a cognizable claim under South Dakota law, but not under California law. "It is well-settled that South Dakota employs the [Restatement (Second's)] most significant relationship test when determining choice of law questions. *See Burhenn v. Dennis Supply Co.*, 685 N.W.2d 778, 784 (S.D. 2004). Under the most significant relationship

approach, courts are instructed to look at the following general principles to determine which state has the most interest in the litigants and the outcome, including, but not limited to:

a) the needs of the interstate and international systems,
b) the relevant policies of the forum,
c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
d) the protection of justified expectations,
e) the basis policies underlying the particular field of law,
f) certainty, predictability and uniformity of result, and
g) ease in the determination and application of the rule to be applied.

Restatement (Second) of Conflict of Laws § 6. Section 145 of the Restatement sets out the following specific factors to be taken into account in applying the principles of section 6 to tort actions: (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered. Restatement (Second) of Conflict of Laws § 145. These contacts are to be evaluated according to their relative importance with respect to the particular issue. *Id.*

In *Lewis v. Caroline Casualty Insurance Company*, the district court for the Southern District of Iowa applied the Restatement in determining whether to apply Iowa or Nebraska substantive laws in a diversity action involving a first-party bad faith claim against a workers' compensation insurance carrier.[4] Civ. No. 19-0214, 2020 WL 1072749, at *3 (S.D. Iowa Mar. 5, 2020); *see also*, *Williams v. Liberty Mut. Ins. Co.*, 741 F.3d 617 (5th Cir. 2014) (applying Restatement (Second) § 145 in determining the state law applicable in a diversity case involving acclaim for bad faith denial of workers' compensation benefits). Iowa law recognizes such a claim whereas Nebraska does not. *Id.* at *2. The Court acknowledged that generally, a state such as Nebraska, that offers fewer benefits to injured workers generally has little interest in denying the injured workers access to another state's benefits, except under the circumstances, as

---
[4] In *Lewis*, a resident and citizen of Nebraska was awarded workers' compensation benefits under Nebraska workers' compensation laws relating to injuries he sustained while employed with a Nebraska corporation doing business in Iowa and Nebraska. *Id.* at *1.

was present in that case, where the employer is a citizen of Nebraska. *Id.* at *4 (stating that Nebraska may have an interest in protecting one of its employer's "justified expectation that [its] liability and the liability of [its] insurer will be limited" under Nebraska law). The court stated that Iowa too may have an interest in regulating the business activities of insurance carriers, such as the defendant, incorporated under its laws even when neither the injured worker nor the employer is a citizen of Iowa. *Id.*

In applying the section 145 factors to determine which state has the most significant relationship with the cause of action, the court found that most courts have held that the place of injury is where the plaintiff was when he was denied medical benefits. *Lewis*, 2020 WL 1072749, at *4 (citing cases). The court stated that this factor weighed in favor of applying Nebraska law because the plaintiff lived in Nebraska during most of the time he alleges to have been denied medical benefits, although he temporarily resided in Iowa during this period. *Id.* The court found that the conduct causing the injury, the decision to delay and deny plaintiff's claims, were made by defendant's third-party administrator and did not occur in either state and thus concluded that it was a neutral factor in its analysis. *Id.* at *5. In evaluating the third factor—the domicile, residence, nationality, place of incorporation and place of business of the parties—the court concluded that it too was a neutral factor since Plaintiff was a citizen of Nebraska and resided in Nebraska for all of but six months during the relevant time period and Defendant was incorporated in Iowa and did business both in Nebraska and Iowa. *Id.* The court found that the fourth factor—where the relationship between the parties was centered—weighed in favor of applying Nebraska law because the plaintiff was living in Nebraska at the time of his work injury and was working for a Nebraska employer when the injury occurred. *Id.* at *5. Although the defendant insurer was incorporated in Iowa, there was no allegation that its third-party claims administrator administered its workers' compensation claims in Iowa. *Id.* The court also found that the plaintiff sought medical treatment in Nebraska and filed multiple claims seeking the payment of benefits there. *Id.* Considering all of the above factors, the court concluded that Nebraska had the most significant relationship and thus, Nebraska law applied.

In considering the factors under section 145, the Court concludes that under the specific facts of this case, California has the most significant relationship with Plaintiff's claim. Plaintiff

was injured in California while working for a California state agency. While Plaintiff became a resident of South Dakota around mid-2017, at all times prior, she was a resident of California. Plaintiff's medical claims were administered by WellComp/Careworks outside of both South Dakota and California, however the employer, DSS, is a California state agency and as such, the Court concludes that it has a reasonable expectation that its liability and those of its insurer[5] will be limited under California law. Even if Plaintiff exhausted her administrative remedies in a California workers' compensation forum, which Plaintiff has failed to allege, the Court concludes an independent tort for bad faith denial of workers compensation is not a cognizable claim under California law.

### III. Civil Conspiracy Claims

There is no separate tort of civil conspiracy and no action for conspiracy to commit a tort unless the underlying tort is committed and damage results therefrom. *See Prakashpalan v. Engstrom, Lipscob & Lack*, 233 Cal.App.4th 1105, 1136 (2014) (citing *Unruh v. Truck Ins. Exchange*, 7 Cal.3d 616, 631 (1972)); *Selle v. Tozser*, 786 N.W.2d 748, 756 (S.D. 2010); *Reuben C. Setlift, III, M.D., P.C. v. Steward*, 694 N.W.2d 859, 867 (S.D. 2005). The Court is obligated to dismiss Plaintiff's civil conspiracy claim because Plaintiff has failed to a state a claim for an underlying tort.

Accordingly, it is hereby ORDERED that:

1) Plaintiff's complaint is DISMISSED WITHOUT PREJUDICE for failure to state a claim upon which relief may be granted; and

2) Plaintiff's motion to appoint counsel, Doc. 9, is DENIED as moot.

---

[5] The State of California is "legally uninsured" as California Labor Code § 3700 exempts the state from the requirement of obtaining workers' compensation insurance. *Human Engineering Lab. V. Workers' Comp. Appeals Bd.*, 108 Cal.App.3d 339, 345 (1980). While it is a bit unclear, it appears that workers compensation claims for state workers are paid from the State Compensation Insurance Fund ("SCIF") and claims are administered by WellComp, a subsidiary of York. *See P. W. Stephens, Inc. v. State Comp. Ins. Fund*, 21 Cal.App.4th 1833, 1835 (1994) ("SCIF is at once both an agency of the State and an insurance carrier.").

Dated this 1st day of April, 2020.

BY THE COURT:

/s/ Lawrence L. Piersol
Lawrence L. Piersol
United States District Judge

ATTEST:
MATTHEW W. THELEN, CLERK

　/s/ Matthew W. Thelen